IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:25-CR-4 MTS/SRW |
| LASHONNE CLAYBON | ) ) | |
| Defendant. | ) ) | <u>Evidentiary Hearing Requested</u> |

**MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Defendant Lashonne Claybon, through undersigned counsel, Assistant Federal Defender Kevin Gau, moves this Honorable Court for an order suppressing physical evidence seized by police officers, and Mr. Claybon's statements made to those officers, on August 8, 2024, following a traffic stop of a Toyota Camry Mr. Claybon was driving that day. Suppression is required because the evidence and statements were gathered immediately following the traffic stop, and police officers unreasonably seized Mr. Claybon by stopping him as they had no probable cause to believe he had violated any traffic laws or ordinances before the stop. *Mapp v. Ohio*, 347 U.S. 643 (1961); U.S. Const. amend IV. Mr. Claybon also moves for an evidentiary hearing on his motion. In further support, Mr. Claybon states:

**Summary of Information Gathered in Discovery and Defense Averments:**

1. St. Louis Metropolitan Police Department Detectives Joseph Kopfensteiner and Logan Priddy have reported that on August 8, 2024, they were patrolling the College Hill neighborhood (in St. Louis, City, within the Eastern District of Missouri) in an

1

unmarked vehicle equipped with lights and an emergency siren due to numerous complaints of drug activity in the area. The detectives have not reported their unmarked vehicle had a dash camera.

2. The detectives reported that while driving northbound on North Grand Boulevard ("Grand") from Natural Bridge Avenue, they spotted a grey Toyota Camry bearing license plate NH8F1U "weaving through traffic" northbound on Grand.

3. The Toyota Camry belonged to Mr. Claybon, and the license plate was valid. Mr. Claybon was driving it. Mr. Claybon denies he was "weaving through traffic."

4. The detectives reported they followed the Camry as it traveled north, continued on Grand through its intersection with West Florissant Avenue, circled around the water tower (the water tower circle is a couple of blocks northeast from the Grand/West Florissant intersection) then begin traveling back south on Grand. When the Camry reached Grand and West Florissant, it turned right and headed west on West Florissant, then made a right turn at John Avenue (two blocks west from the Grand/West Florissant intersection).

5. The detectives reported that in making the turn onto John Avenue, the Camry did not display a turn signal.

6. Mr. Claybon avers he did use a turn signal when he turned onto John Avenue. He recalls that at least by the time he had turned onto West Florissant, he was suspicious there probably was a police car following him closely, so he was alert and scrupulous about obeying every traffic law, and did, in fact, follow every traffic law.

2

7. The detectives did not report that Mr. Claybon had committed any other traffic infractions, such as speeding or disobeying traffic lights or stop signs.

8. At some point after Mr. Claybon turned onto John Avenue, the detectives, who continued to tail the Camry, turned on their lights and siren, and Mr. Claybon pulled over just after turning right on Emily Street, which is a block up from John Avenue's intersection with West Florissant.

9. The rest of the traffic stop proceeded as the detectives have reported: The detectives got out and approached Mr. Claybon's Camry, met with him, asked him for his pedigree and for officer safety reasons asked if there were any firearms inside the Camry. Mr. Claybon told them he had a firearm in his bag, which was on the passenger side of the Camry. After learning that he had a felony record when they ran his name, the detectives detained Mr. Claybon. They then searched the bag which Mr. Claybon had pointed them to, and found a Tauras SAR 9 handgun bearing serial number 33036891, marijuana, and some tablets of suspected ecstasy. Thereafter, Mr. Claybon made post-*Miranda*[1] statements to the detectives indicating ownership of the firearm, and that he had obtained it for protection.

10. Mr. Claybon seeks suppression of the items found in the aforementioned bag, as well as the post-*Miranda* statements made following his arrest.

## Law and Argument

1. Officers had no probable cause to stop Mr. Claybon's Camry. Any traffic violation, even a minor one, gives an officer probable cause to stop the violator. *Whren v.*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

*U.S.*, 517 U.S. 806, 810 (1996); *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998). Mr. Claybon did not commit any traffic violation before the officers pulling up behind him on John Avenue.

    2.    Officers also lacked reasonable suspicion to conduct an investigatory stop of the Camry. An investigatory stop of a person or a vehicle must be supported by reasonable suspicion that the person is or is about to be engaged in criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion requires 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' a brief investigative stop." *United States v. Callison*, 2 F.4th 1128, 1132 (8th Cir. 2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The totality of the circumstances of the case will determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (internal quotation omitted). The officer must be acting on facts directly relating to the suspect or the suspect's conduct and not just on a hunch or on circumstances which describe a broad category of predominantly innocent persons. *Reid v. Georgia*, 448 U.S. 428, 441 (1980). Mr. Claybon had not violated any traffic laws when detectives pulled him over. Neither did the detectives report or see Mr. Claybon behave erratically, furtively, or otherwise in any suspicious manner suggesting he was engaged in criminal activity. They had neither probable cause nor reasonable suspicion to stop him, remove him from his vehicle, and search the bag in it.

WHEREFORE, because there was neither probable cause nor reasonable suspicion to stop Mr. Claybon, he respectfully requests this Court's order suppressing all of the above-named evidence and statements. Mr. Claybon further requests a hearing on the issues raised in this motion.

                                            Respectfully submitted,

                                            /s/ Kevin B. Gau
                                            KEVIN B. GAU #51595MO
                                            Assistant Federal Public Defender
                                            1010 Market Street, Suite 200
                                            St. Louis, Missouri 63101
                                            Telephone: (314) 241-1255
                                            Fax: (314) 421-3177
                                            E-mail: Kevin_Gau@fd.org

                                            ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, the foregoing was filed with the Clerk of the Court to be through the Court's electronic filing system and served thereby upon Ashley M. Walker, Assistant United States Attorney.

                                            /s/ Kevin B. Gau
                                            KEVIN B. GAU
                                            Assistant Federal Public Defender